IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | |
|---|---|
| CHRISTINA CLINE, ) | |
| ) | |
| Plaintiff, ) | Civil No.  2:07-CV-00728 BSJ |
| ) | |
| vs. ) | |
| ) | **MEMORANDUM OPINION  RE:** |
| CHASE MANHATTAN BANK USA, ) | **SUMMARY JUDGMENT &** |
| NATIONAL ASSOCIATION, ) | **MOTION TO CONFIRM** |
| ) | **ARBITRATION AWARD &** |
| Defendant. ) | **ORDER STRIKING** |
| _____ ) | **DECLARATIONS** |
| CHASE BANK, U.S.A., ) | |
| ) | |
| Counterclaimant, ) | |
| ) | |
| vs. ) | |
| ) | |
| CHRISTINA CLINE, ) | |
| ) | |
| Counterclaim Defendant. ) | |

* * * * * * * * *

This matter came before the court on Defendant's Motion to Strike Declarations of Christina Cline, filed June 20, 2008, (dkt. no. 46), Defendant's Motion for Summary Judgment, filed May 27, 2008, (dkt. no. 34), and Defendant's Motion to Confirm Arbitration Award, filed May 27, 2008, (dkt. no. 35).  The court heard oral argument on the Motions on June 25, 2008.  At the hearing, Plaintiff represented  herself and Defendant was represented by David Hall.  Having considered the parties' briefs and arguments, the court granted the motions.  (*See* Order, filed January 15, 2009 (dkt. no.

50).) Exercising its prerogative to expand upon the basis for that ruling, this court now enters the following Memorandum Opinion and Order.

## BACKGROUND

Christina Cline ("Cline") opened a credit card account with Chase Manhattan Bank ("Chase") in August of 1999. Chase mailed Cline her credit card in August of 1999. Contained in the same envelope as the card, was a cardmember agreement (the "agreement"). The first paragraph of the agreement stated: "Any use of your Card or Account confirms your acceptance of the terms and conditions of this Agreement." (Defendant's Motion for Summary Judgment, filed May 27, 2008, (dkt. no. 34), at Ex. A p. 3).

The agreement contained two other sections that are pertinent to this case. First, the agreement contained an arbitration clause, which stated in part:

> **Arbitration**: Any claim, dispute or controversy ("Claim") by either you or us against the other. Or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or your Account, including Claims regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved by binding arbitration by the National Arbitration Forum, under the Code of Procedure in effect at the time the Claim is filed. . . .
> IN THE ABSENCE OF THIS ARBITRATION AGREEMENT YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH A COURT, AND/OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT BY OTHERS, BUT EXCEPT AS OTHERWISE PROVIDED ABOVE, ALL CLAIMS MUST NOW BE RESOLVED THROUGH ARBITRATION.

(*Id.* at p. 4). Second, the agreement contained a provision that allowed Chase to amend

the Cardmember Agreement:

> **Changes in This Agreement**: We can at any time change this Agreement, including the ANNUAL PERCENTAGE RATE and any fees, and can delete provisions relating to your Account and to the nature, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. We will notify you of any change, addition, or deletion. As permitted by applicable law, any change, addition, or deletion to this Agreement will become effective at the time stated in our notice and, unless we state otherwise, the change, addition or deletion will apply to all outstanding balances in your Account as well as to new transactions. The notice we send you may state that you may notify us in writing within a specified time period that you do not wish to accept certain of the changes, additions, and deletions we are making. You will be deemed to accept all the changes, additions, and deletions accompanying the notice and to ratify and confirm all the provisions of your Agreement and your acceptance of all the changes, additions, and deletions described in other notices previously sent to you if (1) you do not send us such a notification in a timely manner, or (2) you use the Card or Account after the conclusion of the specified time period.

(*Id.* at p. 5).

Cline first used the card on August 27, 1999. While Cline admits to receiving a cardmember agreement from Chase that governed her account, she contends that the agreement did not contain an arbitration clause, and that the agreement did not give Chase the right to amend the agreement. However, Cline claims that she does not currently possess the agreement that was originally mailed with her credit card.

In December 2003, Chase Amended the Cardmember Agreement (the "amended agreement"). Chase mailed Cline the amended agreement, which was entitled "IMPORTANT NOTICE FOR BANK ONE CREDIT CARD CUSTOMERS ABOUT CHANGES TO YOUR BANK ONE CARDMEMBER AGREEMENT - PLEASE READ

AND RETAIN FOR YOUR RECORDS." The amended agreement contained the following provision:

> ARBITRATION: The following replaces the section entitled "Arbitration": PLEASE READ THIS PROVISION CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT . . . .
> Any claim, dispute or controversy by either you or us against the other (or against the employees, parents, subsidiaries, affiliates, beneficiaries, agents, or assigns of the other) arising from or relating in any way to your Account, transactions on your Account, our relationship, this Agreement or any provisions of this Agreement ("Claim"), including Claims regarding the applicability or validity of this arbitration clause, shall be resolved exclusively and finally by binding arbitration . . . .
> All Claims are subject to arbitration, no matter what theory they are based on or what remedy they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, negligence, statutory or regulatory provisions, or any other sources of law. Claims made and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis. As an exception to arbitration, you and we retain the right to pursue in a small claims court any Claim that is within that court's jurisdiction and proceeds on an individual basis.
> The party bringing the Claim may select any one of three national arbitration organizations to administer the arbitration of the Claim: the National Arbitration Forum ("NAF"), JAMS/Endispute ("JAMS"), or the American Arbitration Association ("AAA") . . . .

(Declaration of Milissa A. Rutledge, filed May 27, 2008, (dkt. no. 37), at Ex. D p. 3). The notice stated that if Cline objected to the amendment, she must notify Chase in writing by January 26, 2004. Furthermore, any use of the credit card by Cline after February 1, 2004 would be deemed an acceptance of the amendment.

Cline alleges that she never received this notice of amendment to the agreement. Cline never informed Chase that she did not agree to the terms of the agreement and she

continued to use her credit card after February 1, 2004.  On March 30, 2007, Cline had a balance of $4,795.98 on her credit card and had gone over 210 days without making any payments on her balance.  At this point, Chase wrote off Cline's balance as a bad debt.

On May 22, 2007, Chase filed an arbitration claim against Cline with the National Arbitration Forum ("NAF").  Cline then filed a notice of objection to arbitration, claiming that the agreement between her and Chase did not contain an arbitration provision.  Cline refused to participate in the arbitration proceeding.  In August of 2007, the arbitrator determined that the parties had entered a valid and enforceable arbitration agreement and that Cline had incurred a financial obligation due and owing to Chase; the arbitrator entered an award in favor of Chase for the amount of $5,865.69.

On August 31, 2007, Cline filed suit in the Fourth Judicial District Court, State of Utah alleging that Chase breached the contract it had with her.  On September 28, 2007, Chase removed the case to the United States District Court for the District of Utah pursuant to 28 U.S.C. § § 1441, 1446. (Notice of Removal (dkt. no. 1)).  On May 27, 2008, Chase filed a Motion for Summary Judgment (dkt. no. 34) and a Motion to Confirm Arbitration Award (dkt. no. 35).

## ANALYSIS

"The purpose of summary judgment is to assess whether a trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  In other words, there 'must be evidence on which the jury could reasonably find for the plaintiff.'  *Panis v. Mission Hills*

*Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995)." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).  "The court must examine the record to determine whether any genuine issue of material fact is in dispute, and must construe the facts and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.*"* *Holt v. Grand Lake Mental Health Ctr., Inc.*, 443 F.3d 762, 765 (10th Cir. 2006).

### A. Motion to Strike Declarations

Chase asked the court to strike Cline's declarations because her declarations attempt to create a sham issue of fact, or in the alternative, the declarations fail to comply with Rule 56(e) of the Federal Rules of Civil Procedure.  Cline did not file a response to Chase's motions to strike her declarations.

Chase argues that the majority of Cline's declarations contradict her sworn deposition testimony and attempts to create a sham issue of fact.  On March 12, 2008, counsel for Chase took Ms. Cline's deposition.  In her deposition, Cline repeatedly testified that she had no recollection of the terms and conditions set forth in the original cardmember agreement.  Despite this sworn testimony, on June 10, 2008, Cline signed and filed a form Declaration (dkt. no. 40) in which she stated that the agreement presented by the Chase is not the agreement that was sent with her credit card.  Cline also makes additional assertions regarding the terms and conditions of the cardmember

agreement.

Generally, a court may not disregard an affidavit because it conflicts with prior sworn testimony given by the affiant. However, if the court believes the affidavit is merely an attempt to create a sham issue of fact, the court may disregard the affidavit. *See Burns v. Bd. of County Com'rs of Jackson County*, 330 F.3d 1275, 1282 (10th Cir. 2003); *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). The Tenth Circuit has laid out the following factors to determine whether an affidavit is an attempt to create a sham issue of fact: "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Franks*, 796 F.2d at 1237.

Applying these factors to the case at hand, the court concludes that Cline is attempting to create a sham issue of fact. First, although Cline appeared *pro se* at her deposition, she had the opportunity at the end of the deposition to add anything she deemed relevant. Second, Cline's declarations are not based on any newly discovered evidence. In fact, Cline claims that she is not in possession of the original cardmember agreement that was mailed along with her credit card. Third, Cline's declarations make no reference to her deposition; nor do they attempt to clarify any statements she made in her deposition.

Moreover, Cline's declarations are nearly identical to those filed by many customers of North American Education Services ("NAES") that are engaged in similar litigation. NAES is an internet company that promises customers it will eliminate or substantially reduce their credit card debt through the use of form dispute letters and litigation. The court finds it highly implausible that each of these litigants independently came up with the same factual allegations to assert in their declarations filed with the court.

Based on this information, the court concludes that Cline was attempting to create a sham issue of fact by filing declarations that conflicted with her sworn deposition testimony. Therefore, the court grants Chase's Motion to Strike Declarations of Christina Cline.

**B. Breach of Contract**

Cline alleges that Chase breached the original contract between the parties by submitting its dispute to arbitration because their original agreement did not contain an arbitration clause. Chase moves this court for an order granting summary judgment on Cline's breach of contract claim. Although Cline alleges that the agreement did not contain an arbitration clause, she fails to provide any evidentiary support for this allegation aside from her own declarations, which have now been stricken from the record.

The agreement submitted by Chase stated that the use of the card by Cline would

bind her to the terms and conditions of the agreement. Cline subsequently used the credit card, binding her to the terms and conditions of the agreement, including the arbitration provision. The arbitration provision provided that all claims by either party, including claims relating to the applicability of the arbitration clause, "shall be resolved by binding arbitration by the National Arbitration Forum." (Defendant's Motion for Summary Judgment, filed May 27, 2008, (dkt. no. 34), at Ex. A p. 3).

In December 2003, Chase amended the arbitration clause of the agreement. The amended clause allowed the parties to choose between three arbitration forums. The amendment also provided one exception to arbitration. The amendment stated; "As an exception to arbitration, *you and we* retain the right to pursue in a small claims court *any Claim* that is within that court's jurisdiction and proceeds on an individual basis." (Declaration of Milissa A. Rutledge, filed May 27, 2008, (dkt. no. 37), at Ex. D p. 3 (emphasis added)). The agreement defines a claim as "[a]ny claim, dispute or controversy." Because Cline ostensibly had a dispute over the amount she owed Chase, she may have had a right under this exception to opt out of arbitration and require Chase to resolve her "claim" in small claims court rather than by arbitration.

But this court need not determine whether Cline had a right to demand that the claim be resolved in small claims court rather than by arbitration. Even if Cline possessed such a right, she waived that right by not pursuing the small claims court remedy. Cline never attempted to invoke this exception by requesting that the claim be

transferred from arbitration to small claims court. Furthermore, Cline has never invoked the small claims court exception as a basis for vacating the arbitration award. Rather, Cline has consistently alleged that the original cardmember agreement did not contain an arbitration provision and that the she never received an amendment to the original agreement. Therefore, any right Cline may have had under the small claims court exception was waived by her not invoking such an exception at any stage of the dispute.

For the reasons discussed above, the court concludes that a valid arbitration provision did exist in the agreement between Cline and Chase and that Chase did not breach the agreement by seeking resolution of its dispute with Cline through arbitration. Accordingly, the court grants Chase's motion for summary judgment.

### C. Confirmation of the Arbitration Award

Cline has petitioned the court to vacate the arbitration award, and Chase has filed a motion requesting that the court confirm the arbitration award pursuant to section 9 of the Federal Arbitration Act ("FAA"). 9 U.S.C. § 9 (2006).

The scope of a court's review of an arbitration award is very limited. *See e.g., Brown v. Coleman Co.*, 220 F.3d 1180, 1182 (10th Cir. 2000) (stating that "we must give extreme deference to the determination of the arbitration panel for the standard of review of arbitral awards is among the narrowest known to law."). The FAA states that "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9.

> Under § 10 of the FAA, a district court is only permitted to vacate an arbitration award if it finds that: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone a hearing, in refusing to hear evidence, or in misbehaving in some other way; or (4) the arbitrators exceeded their powers or imperfectly executed them.

*Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001). Under § 11 of the FAA, a district court can modify or correct an arbitration award if (1) "there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award"; (2) "the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted"; or (3) "the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11.

Cline fails to provide a basis under the FAA for vacating or modifying Chase's arbitration award. Cline alleges that the arbitration award was procured pursuant to a fraudulent agreement that Cline claims she never received, and that Chase obtained its arbitration award through the NAF's partiality towards Chase. Cline suggests that the NAF is biased in favor of Chase because the NAF relies on Chase for future business.

The court concludes that Cline's unsupported objections to Chase's motion are insufficient to adequately contest confirmation of the arbitration award. First, as discussed above, the court finds there was a binding arbitration provision in the agreement between Cline and Chase. Therefore, the arbitration award was not procured

by fraud. Second, Cline has not provided any evidence to support her allegation that the arbitrator was biased in favor of Chase. "For an award to be set aside, the evidence of bias or interest of an arbitrator must be direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir. 1982). Cline's bare allegation that the NAF was biased toward Chase because they will likely receive future business from Chase is remote, uncertain and speculative, and is therefore not sufficient to set aside the arbitration award.

For the reasons discussed above, the court finds Cline has not presented sufficient evidence to demonstrate that the arbitration award should be vacated or modified. Accordingly, the court grants Chase's Motion to Confirm the Arbitration Award.

## CONCLUSION

The cardmember agreement between Chase and Cline contained a valid arbitration provision. Although, Cline submitted declarations alleging the agreement did not contain an arbitration provision, her declarations were merely an attempt to create a sham issue of fact. Therefore, Chase properly sought to settle its dispute with Cline through binding arbitration. There is no evidence to support allegations that the arbitrator award was procured by fraudulent means or that the arbitrator was biased in favor of Chase.

Therefore,

**IT IS ORDERED** that Chase's Motion to Strike Declarations of Christina Cline,


is hereby GRANTED.

DATED this ___ day of January, 2009.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge

is hereby GRANTED.

DATED this **29** day of January, 2009.

BY THE COURT:

*[signature]*

BRUCE S. JENKINS
United States Senior District Judge